UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRYSTAL NICHOLE CORWIN, | No. 1:25-cv-00898-GSA |
| Plaintiff, | |
| v. | **ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF AND AGAINST DEFENDANT COMMISSIONER OF SOCIAL SECURITY** |
| Commissioner of Social Security, | |
| Defendant. | **(Docs. 14, 18)** |

### I.  Introduction

Plaintiff Crystal Nichole Corwin ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her applications for disability insurance benefits and supplemental security income pursuant to Titles II and XVI, respectively, of the Social Security Act.  After reviewing the record, the Court finds that substantial evidence and applicable law do not support the ALJ's decision.  Therefore, for the reasons stated below Plaintiff's appeal is granted.

### II.  Factual and Procedural Background

On October 28, 2016, Plaintiff applied for benefits alleging disability as of April 2, 2016. AR 241–54.  The Commissioner denied the applications initially on April 14, 2017, and on reconsideration on July 27, 2017.  Plaintiff requested a hearing which was held before an Administrative Law Judge (the "ALJ") on March 5, 2019.  On April 17, 2019, the ALJ issued a decision denying Plaintiff's application.  The Appeals Council denied review on January 22, 2020.  On March 17, 2020, Plaintiff filed a complaint in this Court.  On December 6, 2021, the Court ordered remand for further administrative proceedings and a new decision regarding whether Plaintiff was disabled.

Subsequently, following a somewhat lengthy history, a new hearing was held before an

ALJ on May 1, 2025. <u>See</u>, AR 2205-34.   The ALJ rendered an unfavorable decision on June 3, 2025. AR 2167–89. The appeals council declined review whereupon Plaintiff filed the instant complaint in this Court on July 23, 2025. Doc No. 1.

### III.    **The Disability Standard**

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.   "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla, but less than a preponderance.  *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).        When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted).  If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision.  *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While Plaintiff bears the burden of proof at steps one through four, the burden thereafter shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

### IV.    The ALJ's Decision in the Instant Application

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of April 2, 2016. AR 2170. At step 2, in contrast to Plaintiff's October 28, 2016 application at which the ALJ only found severe impairments of spine disorder (syrinx) and anxiety (AR 18), the ALJ at the newest administrative hearing held in May 2025 found right knee derangement with arthroscopic surgery, abnormal left knee patellar tendon friction syndrome, major depressive disorder, generalized anxiety disorder (GAD), borderline intellectual functioning (BIF), lumbar spine degenerative disc disease (DDD), thoracic spine syrinx, and obesity. AR 2170. At step three, the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 2170-73.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and

concluded that Plaintiff had the RFC to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), with the following limitations:

> the claimant can sit for six hours in an eight-hour workday, and she can sit for thirty minutes at a time, then she would need to stand for up to three minutes while remaining on task. She can stand and/or walk for four hours in an eight-hour workday, but she can stand and/or walk for 30 minutes at a time, then she would need to sit for up to three minutes while remaining on task. She can occasionally climb ramps, stairs, ladders, ropes, and scaffolds; and she can occasionally balance, stoop, kneel, crouch, and crawl. The claimant should avoid more than occasional exposure to work at high, exposed places. She can understand, remember, and carry out simple instructions.

AR 2173–2186.

At step four, the ALJ concluded that Plaintiff had no past relevant work.  AR 2187.  At step five, in reliance on the VE's testimony the ALJ found that, considering Plaintiff's vocational profile and her RFC, there were jobs in significant numbers in the national economy that Plaintiff could perform: housekeeper/cleaner, cafeteria attendant, and **routing clerk**. Accordingly, the ALJ concluded that Plaintiff was not disabled at any time since her alleged disability onset date of April 2, 2016.  AR 2188.

### V.    Issues Presented

Plaintiff asserts five claims of error: **A**- the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's allegations of pain and physical dysfunction; **B**- the ALJ failed to carry her burden to show that Plaintiff was able to perform a significant number of jobs in the national economy; **C**- the ALJ failed to provide specific and legitimate reasons for rejecting the treating medical source opinion of Nick Proen, P.T., D.P.T.[1]; **D**- the ALJ failed to provide specific and legitimate reasons for rejecting the examining medical source opinion of the psychological consultative examiner Lance Portnoff, Ph.D.; and  **E**- the ALJ failed to properly evaluate the medical source opinions of the following State agency psychological consultants: Sharon Arnes-Dennard, Ph.D., Megan Nicoloff, Psy.D., and Pamela Hawkins, Ph.D..

To begin, because there is significant overlap between claims **A** and **C** above, they will be

---

[1] Hereinafter he will be referred to as Dr. Proen.

4

addressed together under a broader analysis of the RFC.  Additionally, each of these 5 claims of error, except that of claim **C**, will be separately addressed below identified using the same alphabetic letter designation.

### A.    RFC; Plaintiff's Subjective Symptoms; Dr. Proen's Opinion

#### 1.    Applicable Law

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity.  *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

A determination of residual functional capacity is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  *See* 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion), 404.1546(c) (identifying the ALJ as responsible for determining RFC).  "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."  *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).  In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment."  *Robbins,* 466 F.3d at 883.  *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence).  "The ALJ can meet this burden by setting out a detailed and

thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); Smolen, 80 F.3d at 1281; S.S.R 16-3p at 3. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; Smolen, 80 F.3d at 1281–82. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p at *10. Subjective testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

As the Ninth Circuit clarified in *Ferguson*, although an ALJ may use "*inconsistent* objective medical evidence in the record to discount subjective symptom testimony," the ALJ "cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence fully corroborating every allegation within the subjective testimony." *Ferguson v. O'Malley*, 95 F.4th 1194, 1200 (9th Cir. 2024) (emphasis in original).

In addition to the objective evidence, other factors that can be considered include: 1- daily activities; 2- the location, duration, frequency, and intensity of pain or other symptoms; 3- precipitating and aggravating factors; 4- the type, dosage, effectiveness, and side effects of any medication; 5- treatment other than medication; 6- other measures the claimant uses to relieve pain or other symptom; and 7- other factors concerning the claimant's functional limitations and

restrictions due to pain or other symptoms. See, 20 C.F.R. § 416.929(c)(3)

Regardless of source, all medical opinions that are not given controlling weight are evaluated using the following factors: examining relationship, treatment relationship, supportability, consistency, and specialization.  20 C.F.R. § 404.1527(c).  The opinion of a non-examining physician, such as a state agency physician, may constitute substantial evidence when it is "consistent with independent clinical findings or other evidence in the record."  *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

### 2.    Analysis

#### a.    Summary of Testimony, Dr. Proen's Opinion

Plaintiff reported that she suffered from chronic pain and had pain throughout her entire body which caused her to feel numbness and pins and needles throughout her body.  AR 354. At the hearing before the ALJ, Plaintiff testified that her hands swelled up and became numb (AR 2224, 2237),  that she was only able to lift and carry 10 pounds (AR 2219), that she was able to sit, stand, or walk for only 20 to 30 minutes at a time (AR 2219), and that she needed a 30-minute break after any activity.  AR 2224.  Plaintiff also reported suffering numbness in all four extremities (AR 443), tingling and numbness in both feet (AR 754, 761), and that her pain increased with bending, lifting, looking down, sitting, and going from sitting to standing. AR 935.

Plaintiff attended physical therapy testing for three days with Dr. Proen.  AR 2462.  Dr. Proen opined that Plaintiff's back pain limited her ability to perform repetitive walking, pushing, pulling and lifting. AR 2462.  Dr. Proen also noted that Plaintiff required frequent breaks and could only walk for 12 minutes. AR 2462.  Finally, he opined Plaintiff could frequently sit/stand/walk, frequently reach overhead with her right arm, occasionally lift 10 pounds, occasionally postural maneuvers, and occasionally utilize finger dexterity.  AR 2462.

#### b.    Objective Evidence

In terms of the physical examination findings throughout the long duration of the relevant period, both parties cite positive and negative findings on various subjects although Plaintiff's examination findings significantly outnumber those cited by Defendant and cover a much lengthier period of time.    Illustrative of some of Plaintiff's findings, which are found at page 11

of the MSJ,  show that Plaintiff had decreased range of motion in her neck and back, positive straight leg raising test bilaterally, tenderness in her neck and back, paraspinal muscle spasm, weakness in her left lower extremity, decreased motor strength in her ankles, pain on range of motion of her bilateral knees, decreased motor strength in her lower extremities, decreased hip flexion and abduction, and decreased sensation along her L4 and L5 nerve distribution.[2]  Plaintiff also cites records demonstrating a limping gait.  See Id. (citing AR 1338, 1343, 1347, 1351, 1464, 1476, 1484, 1490, 1497, 1505, 1511).

Plaintiff offers nearly 100 citations covering roughly 2,000 pages which begin at AR 1002 and conclude at AR 2706.  These records span a 10-year period from April 2, 2016, the alleged onset date, through the date of the ALJ's decision, June 3, 2025 (AR 2167–99).

In contrast, Defendant cites findings that appear at AR pages 2470-71, 2477-78, 2483-84, 2488-89, 2492-93, 2507-08, 2518-21, 2536-37, 2554-55, 2689-90, 2695, 2701, which include findings of normal/unassisted ambulation, at times negative straight leg raise, and at times 5/5 strength.  It's notable that Defendant's findings cover only the period of June 23, 2023, through March 27, 2025, which comprises only about 20% of the relevant period.

Plaintiff's recitation of abnormalities is significant in breadth, number of examples, and includes the duration of time covering nearly the entire relevant 10-year period.  In addition, and upon cite checking a sampling of Plaintiff's pin citations, they generally appear to support the propositions for which they are cited and further appear significantly more emblematic of the overall record.

Of further note, Defendant does not take issue with any of Plaintiff's cited records, nor to Plaintiff's descriptions thereof.  Finally, from this sampling of citations it also appears that the physical examinations and imaging abnormalities are significantly more supportive of Plaintiff's claims of pain and dysfunction.

---

[2] Page 11 of the MSJ  cites AR 641, 645, 648, 651, 654, 657, 660, 906, 931, 936, 942, 946, 950, 951, 954, 955, 1002, 1009, 1015, 1024, 1030, 1036, 1121, 1129, 1136, 1142, 1151, 1216, 1220, 1332- 1333, 1338, 1343, 1347, 1351, 1356, 1361, 1438-1439, 1444-1445, 1450-1451, 1458-1459, 1464-1465, 1470-1472, 1476-1478, 1484-1485, 1490-1492, 1497-1499, 1505-1506, 1511-1513, 1935, 1939, 1942-1943, 1946-1947, 1951, 1955, 1958-1959, 1963, 1966-1967, 1995, 2471, 2478, 2483-2484, 2488-2489, 2492-2493, 2499-2500, 2503-2504, 2507-2508, 2512-2513, 2519-2520, 2523-2524, 2527-2528, 2532-2533, 2536-2537, 2541, 2546, 2549-2550, 2554-2555, 2689- 2690, 2695, 2701, 2706).

In response to Plaintiff's subjective complaints mentioned above, complaints which largely echo Dr. Proen's opinion, Defendant again canvasses the objective physical examination findings of record, albeit with significantly more examples. Though acknowledging abnormalities like walking with a limp or a walker, Defendant argues that "most other times Plaintiff exhibited normal [ROM] in her cervical and thoracic back, normal sensation, five out of five strength, normal muscle tone, normal gait and station, and no assistive device for ambulation. See, Resp at 5–6 (AR 907, 936, 942, 946, 950, 954, 1002, 1008, 1024, 1030, 1036, 1052, 1060, 1065, 1066, 1068, 1121, 1135, 1142, 1227, 1250, 1332, 1337, 1338, 1341, 1347, 1351, 1356, 1361, 1438, 1444, 1445, 1450, 1451, 1458, 1464, 1470, 1476, 1484, 1490, 1511, 1935, 1939, 1943, 1946, 1951, 1955, 1958, 1959, 1963, 1966, 1967, 1971, 1992-2000).

A comparison of just two examples from these citations illustrates why Plaintiff's position is the more convincing.   In the first, Plaintiff identifies paraspinal muscle spasm, whereas Defendant cites no countervailing findings.  MSJ at 11.  In the second, Plaintiff cites weakness in her left lower extremity and decreased motor strength in her ankles (MSJ at 11), whereas Defendant generally identifies "five out of five strength" and "normal muscle tone," and does so without referring to the body part to which these findings apply.  Resp. at 5.  Again, Plaintiff's examples of physical examination abnormalities are more significant in breadth, number, and time period.

Next, Defendant references the State Agency physicians' opinions which are known as "Prior administrative findings" (PAMFs).  It is worth noting that although that these opinions may constitute substantial evidence when they are "consistent with independent clinical findings or other evidence in the record" (See, Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (emphasis added)), PAMFs are, as their name suggests, more appropriately considered findings rather than opinions.

Defendant further argues that the ALJ's findings "were consistent with the imaging evidence that showed spinal abnormalities but no severe ones (AR 2463-64, 2465-66, 2467-68)." Resp. at 3 (emphasis added).  Yet a November 30, 2022, cervical spine MRI showed "moderate to severe left and moderate right foraminal stenosis" at C5-C6 (AR 2159 (emphasis added), along

with mild central chord stenosis.  Plaintiff identified that finding in her brief.  MSJ at 12.

Thus, given that Plaintiff's examples of physical examination abnormalities are significantly more in breadth, number and time period than those of contrary findings presented by Defendant, especially considering the MRI imaging which depicts findings of moderate to severe foraminal stenosis and mild central canal stenosis, there exists abundant support for Plaintiff's allegations of disabling pain and limitation—which happens to be in line with the April 2024 opinion of Dr. Proem rendered after 3 days of testing.  AR 2462.

### c.    Daily activities

As previously noted, Plaintiff testified she could lift/carry 10 pounds and was able to sit, stand, or walk for only 20 to 30 minutes at a time.  AR 2219.    She further testified that she needed a 30-minute break after any activity.  AR 2224.  She reported to her treating providers that she was suffering numbness in all four extremities (AR 443), tingling and numbness in both feet (AR 754, 761), and that her pain increased with bending, lifting, looking down, sitting, and going from sitting to standing.  AR 935.

The RFC provided for light work as defined in 20 CFR 404.1567(b) and 416.967(b) [frequently lift 10 pounds and occasionally 20 pounds, SSR 83-10], with the addition of the following:

> the claimant can sit for six hours in an eight-hour workday, and she can sit for thirty minutes at a time, then she would need to stand for up to three minutes while remaining on task. She can stand and/or walk for four hours in an eight-hour workday, but she can stand and/or walk for 30 minutes at a time, then she would need to sit for up to three minutes while remaining on task. She can occasionally climb ramps, stairs, ladders, ropes, and scaffolds; and she can occasionally balance, stoop, kneel, crouch, and crawl. The claimant should avoid more than occasional exposure to work at high, exposed places. She can understand, remember, and carry out simple instructions.

As to Plaintiff's daily activities, the ALJ determined that they were inconsistent with the degree of her alleged impairment.

Defendant emphasizes that Plaintiff stated she was able to drive, perform personal hygiene tasks and cook (AR 935, 941).  Defendant further emphasizes that Plaintiff reported that she could go outside by herself, attend social gatherings, make and attend doctor appointments, care

for other people or pets, take kids to the park, dress herself, brush her teeth, shower, prepare her own meals, use the restroom, go to doctors' appointments, and use her cell phone  (AR 2152, 2182).

In opposition, Plaintiff argues that her daily activities are not transferable to a work setting.  Defendant in turn responds that while an ALJ may consider whether a Plaintiff's daily activities are transferable to the world of work, an ALJ is not obliged to do so, citing Molina v. Astrue, 674 F.3d 1104, 1112-13 (9th Cir. 2012). Defendant further responds that an ALJ may alternatively consider whether a claimant's activities are inconsistent with the degree of impairment alleged, citing Smart, 53 F.4th at 499 (it is reasonable for an ALJ to rely on the claimant's level of activity to discount their allegations of totally disabling symptoms).

Although it is correct that an ALJ may discount subjective complaints based on daily activities, this is provided: 1- a claimant is able to spend a substantial part of his /her day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, or **2**- if the activities contradict his/her other testimony.  See, Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007). Here, it has not been adequately demonstrated that Plaintiff's cited activities are readily transferable to a work setting, or that Plaintiff's daily activities have been shown to adequately contradict her complaints regarding pain and limitation.

Moreover, activities of dressing, teeth brushing, showering, using the restroom, using a cell phone, driving, cooking, caring for other people and pets, and taking kids to the park, have not been shown that they adequately refute Plaintiff's contentions regarding her alleged limitations.  In addition, simply making and attending doctor appointments also does not adequately refute her alleged limitations.

Finally, Plaintiff's attending social gatherings, whether considered in isolation or in combination with her other daily activities described above, also do not establish a sound basis upon which the ALJ could properly reject her complaints of severe pain and dysfunction.

**B.     Step Five finding that Plaintiff was able to perform a significant number of jobs in the national economy**

As mentioned above, while the Plaintiff bears the burden of proof at steps one through

four, the burden then shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014). The Agency can meet this burden through the testimony of a VE or, when conclusive, with reference to the Medical-Vocational Guidelines (the grids), 20 C.F.R. pt. 404, subpt. P, app. 2.

Here, in concluding that Plaintiff was not disabled, the ALJ relied on the testimony of the VE that a hypothetical claimant with Plaintiff's vocational profile and RFC would be able to perform jobs existing in significant numbers in the national economy. The jobs identified by the VE were housekeeper/cleaner, cafeteria attendant, and **routing clerk**. AR 2188.

In response, Plaintiff argues:

> The ALJ's first hypothetical question that involved an individual who was able to perform the exertional requirements of light work; namely, who was able to stand and walk for 6 hours in an 8-hour workday (Tr. 2229; see SSR 83-10: "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday"). However, the ALJ had found that Plaintiff was only able to stand and walk for 4 hours in a workday and that Plaintiff needed to alternate her position every 30 minutes (Tr. 2173). Thus, the vocational expert's testimony regarding the jobs of housekeeper/cleaner, cafeteria attendant, and routing clerk did not pertain to Plaintiff and did not substantiate the ALJ's step five findings.

MSJ at 15.

This response by Plaintiff's, at least at first glance, has merit as Plaintiff is correct that the ALJ's hypothetical to the VE considered a claimant who could perform the full range of light work as it relates to standing/walking (i.e. 6 of 8 hours), while in contrast the actual RFC allotted only 4 hours of standing/walking with position changes every 30 minutes. However, the ALJ subsequently posed another hypothetical which <u>did</u> include Plaintiff's limitation of 4 hours of standing/walking with 30-minute breaks. The VE then responded to the new hypothetical continuing to identify **routing clerk** as a job Plaintiff could perform while also adding bench assembler and production assembler. AR 2230–31.

### C.[3]    <u>The Rejection of Dr. Proen's Opinion</u>

---

[3] As mentioned above, due to significant overlap, Dr. Proen's opinion and Plaintiff's testimony have both been addressed in Section **A**. The difference between the two standards, including the difference between pre and post-

### D.    Dr. Portnoff's MRFC Opinion

Plaintiff's arguments regarding this claim of error center around the ALJ's alleged failure to incorporate into the RFC Dr. Portnoff's opinion that Plaintiff had mild to moderate limitations in her ability to interact with coworkers and the public, along with <u>moderate</u> <u>limitations</u> in her ability to complete a normal workday or workweek without interruptions from her psychiatric condition.  MSJ at 21.

However, Plaintiff identifies no authority that mild to moderate limitations must be incorporated into the RFC.  Further, there is authority suggesting that "Moderate" mental limitations are not per se disabling.  <u>See,</u> *Rose M. E. v. Saul*, 2021 WL 1612091, at \*3 (C.D. Cal. Apr. 26, 2021) (SSA defines a 'moderate' limitation to mean '[t]here is more than a slight limitation in this area, but the individual can still function satisfactorily.'") (citing HALLEX (Hearings Appeals and Litigation Law Manual) I-2-5-20, referencing Form HA-1152-U3 (Medical Source Statement of Ability to do Work-related Activities (Mental)).

Despite whether or not mild to moderate limitations regarding a claimant's psychiatric condition are required to be incorporated into the RFC, from a practical standpoint Plaintiff offers no examples of how the RFC should have been changed to more appropriately account for her moderately limited ability to complete a normal workday or workweek without interruptions from her psychiatric condition.  MSJ at 21.

Finally, even though the VE testified that more than 10% off-task behavior, or more than 1-day of unexcused absences, would be work-preclusive (AR 2231), it is not clear whether the above-referenced "moderate" limitation implies more than 10% off task behavior, or more than 1 unexcused absences per month.

In sum, Plaintiff has not established that the ALJ committed error by not incorporating Dr. Portnoff's opinion into the RFC.

### E.    The medical source opinions of the State agency psychological consultants, Sharon Arnes-Dennard, Ph.D., Megan Nicoloff, Psy.D., and Pamela Hawkins, Ph.D.

---

March 27, 2017 revision to the regulations, is not sufficiently meaningful in their application here to warrant a separate discussion.

As to this claim or error, Plaintiff contends that the ALJ improperly rejected the opinions of psychological consultants Sharon Arnes-Dennard, Ph.D., Megan Nicoloff, Psy.D., and Pamela Hawkins, Ph.D., who reviewed the record and opined that Plaintiff was limited to understanding and remembering one to two-step tasks. See, Plaintiff's opening brief (Doc. 14, pg 27) citing AR 73, 88, 107, 123, 160.

Defendant responds that "The State agency psychologists who reviewed the record found that Plaintiff was capable of both one to two step tasks and simple work". See, Doc. 18, at 6 citing AR 72-73. 123-24. 142-43) (emphasis added). Here, a review of the AR reveals that consultants Hawkins and Nicoloff both opined that Plaintiff could maintain concentration, persistence and pace throughout a normal workday/workweek as related to simple/unskilled tasks. AR 123 & 143 (emphasis added).   Importantly, simple work is consistent with positions requiring Reasoning level 2, which is applicable for a claimant who is limited to simple, routine tasks. See, Zavalin v Colvin, 778 F.3d 842, 846-47 (9th Cir 2015).  Further, the position of **routing clerk** (DOT 222.687-022) is a Reasoning Level 2 occupation. See, Bates v. O'Malley, 2024 U.S. Dist. Lexis 46318 (E.D. Cal 2024)

Thus, notwithstanding that the opinions of the consultants may have been improperly rejected by the ALJ, there still was  no error committed in doing so.

### VI.    Remand for Further Proceedings

The Court finds that the ALJ did not provide substantial evidence for rejecting Plaintiff's subjective statements concerning pain and inability to perform light exertional lifting/carrying, sitting/standing/walking, and for rejecting Dr. Proen's opinion to the same effect.   Remand is therefore warranted for reevaluation of these issues. *See Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Generally when a court . . . reverses an administrative determination, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.").

In this reevaluation, given the difference between the 9- year period of records described by Plaintiff, as opposed to only 3 years covered by Defendant, the ALJ should give specific consideration as to whether there is any discrete period of time justifying a closed period of disability, and additionally whether 9-years of retroactive payment is or is not warranted.

Finally, updated records, imaging, and a consultative examination---where practical and prudent---should also be considered when evaluating prospective disability.

**VI.    Conclusion and Order**

For the reasons stated above, the Court finds that substantial evidence and applicable law do not support the ALJ's conclusion that Plaintiff was not disabled.    Accordingly, it is **ORDERED** that:

1.   Plaintiff's Motion for Summary Judgment, ECF No. 14, is **GRANTED**

2.   Defendant's Cross-Motion, ECF No. 18, is **DENIED**

3.    This action is **REMANDED** to the Commissioner under the fourth sentence of Section 205(g) of the Social Security Act, 42 U.S.C. 405(g).

4.   The Clerk is directed to enter judgment in favor of Plaintiff, against Defendant, and to close this case.

IT IS SO ORDERED.

Dated: **May 7, 2026**                        **/s/ Gary S. Austin**
                                         UNITED STATES MAGISTRATE JUDGE